# DISTRICT OF COLUMBIA v. MARSH.

### SCHOOLS; BOARD OF EDUCATION.

1. The board of education of the District of Columbia has no power to appoint a teacher to an eighth grade school and under such appointment require her to perform the services of a high school teacher of a given grade; and if she performs such services she is entitled to recover from the District of Columbia the difference between the salary paid her as an eighth grade teacher and the salary due her as a high school teacher, together with longevity pay due her as a high school teacher. (Construing acts of Congress of June 20, 1906, 34 Stat. at

L. 316, chap. 3446, and March 3, 1909, 35 Stat. at L. 688, chap. 250;
and citing *District of Columbia* v. *Martin*, 34 App. D. C. 265.)

2. The board of education of the District of Columbia has power to em-
ploy from time to time a sufficient number of teachers in the public
schools to keep the schools in operation, provided the teachers possess
the qualifications and are classified as required by statute; and the
board is not prohibited, as are the commissioners of the District,
from creating obligations in excess of existing appropriations.
(Construing acts of Congress of June 8, 1906, 34 Stat. at L. 219,
chap. 3054, and March 4, 1909, 35 Stat. at L. 907, chap. 298; and
citing *Myers* v. *District of Columbia*, 25 App. D. C. 132, and *United
States ex rel. Nalle* v. *Hoover*, 31 App. D. C. 311.)

No. 3027.   Submitted October 5, 1917.   Decided November 12, 1917.

HEARING on an appeal by the defendant from a judgment
of the Supreme Court of the District of Columbia in an action
to recover a balance claimed to be due for services performed
by the plaintiff as a teacher in the public schools.   *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellee, Genevieve Marsh, plaintiff below, sued the District
of Columbia for a balance claimed to be due on account of
services performed as a teacher in the public schools of the
District.

It appears that from October 1, 1909, to June 30, 1910,
plaintiff was paid the salary of an eighth grade teacher in the
public schools, while, in fact, she performed the services of a
teacher of English in the McKinley Manual Training School,
one of the high schools of the District.   During the school year
of 1908 to 1909 plaintiff was a high school teacher in New
Jersey.   She had taken the required examination for a high
school teacher in the District of Columbia.   On May 20, 1909,
plaintiff was placed upon the eligible list of high school teachers,
and was offered an appointment to fill a vacancy, but declined
as her contract in New Jersey had not expired.   Correspondence
was had with the District school officials which led plaintiff to
believe, and reasonably so, that she would receive an appoint-
ment in the fall of 1909 as a teacher of English in the District

high schools. Relying upon this, plaintiff declined to renew her contract in New Jersey.

On the opening of the school year in September, 1909, plaintiff was assigned to teach English in the McKinley Manual Training School. On October 6th, the secretary of the board of education notified her that the following action had been taken by the board: "Detail Miss Genevieve Marsh, teacher of the eighth grade, as teacher of English, and assign to the McKinley Manual Training School, to take effect on and after October 1, 1909. Appoint Miss Genevieve Marsh, teacher of the eighth grade, to take effect on and after October 1, 1909."

Plaintiff continued to teach in the high school, and was paid the salary of an eighth grade teacher at the rate of $950 per annum. The board of education, on July 1, 1910, pursuant to the recommendation of the superintendent, took the following action: "Promote Genevieve Marsh, teacher of the eighth grade, to teacher of English in the McKinley Manual Training School, to take effect on and after September 1, 1910."

The court entered judgment for the plaintiff, based upon the salary she would have received as a regular high school teacher, at the rate of $1,000 per annum for the period here under consideration, together with longevity pay at the rate of $800 for the like period, less the amount she was paid on the basis of the salary of an eighth grade teacher. From the judgment the District has appealed.

*Mr. Conrad H. Syme,* Corporation Counsel, and *Mr. Robert L. Williams,* Assistant, for the appellant.

*Mr. Paul E. Lesh* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the court:

It is conceded that plaintiff performed the services of a high school teacher during the period in question. It is also conceded that, if entitled to the salary of a high school teacher, her compensation should have been at the basic salary of high school teachers of $1,000 per annum, with additional longevity

increase of $800. The case turns upon the power of the board, by labeling plaintiff an eighth grade teacher, to require her to perform the services of a high school teacher for the salary of an eighth grade teacher.

Section 4 of the act of Congress of June 20, 1906 (34 Stat. at L. 316, chap. 3446), provides, among other things, that "teachers of eighth grades, class 5," shall receive salaries ranging from $950 to $1,350, and that "head teachers and teachers of normal, high, and manual training schools, group A, class 6," shall each be paid a basic annual salary of $1,000, with additional longevity pay ranging from 100 to $800 per annum, based upon the length of time the teacher has been engaged in high school work. Section 6 of the same act requires the board of education to "arrange all teachers in the classes and groups in the above schedule." It also provides that "no teacher * * * shall be appointed to any position in the graded schools, high schools, manual training schools, or normal schools, * * * until he shall have passed an examination prescribed by the boards of examiners."

In the classification of teachers Congress seems to have placed strict limitations upon the board. Teachers can only be assigned to the classes here under consideration when they have passed the examination prescribed for a particular class. Plaintiff had not taken the examination required for admission to "class 5," eighth grade, but had taken the examination for "group A, class 6." We think it clear, therefore, that, when she was required to perform high school work, the work for which she had qualified and for which she stood on the eligible list, it amounted to an assignment to "group A, class 6," and she immediately became classified as such.

But plaintiff's right to be paid the basic compensation of a high school teacher presents a more difficult question. We are not troubled by the question of acquiescence on the part of plaintiff; since, as it is not advanced by counsel for the District, it presumably was considered of no importance. The order detailing her as an eighth grade teacher was void, and could not operate to fix her salary as of that grade, since the statute prescribes her status when her general classification has

been established, and any attempt on the part of the board to change the basis of compensation would be contrary to the express provisions of the statute, and therefore void. The later action of the board in attempting to promote plaintiff from an eighth grade to a high school teacher was a mere nullity, since her status had been fixed by the implied terms of her appointment, by her qualifications as tested by examination, by her eligibility, and by the work she had been required to perform.

However, we are confronted by a provision of the District Appropriation Act for the year ending June 30, 1910 (35 Stat. at L. 688, 704, chap. 250), as follows: "For teachers in group A of class 6, 203 in all, at a minimum salary of $1,000 each." This is a limitation upon the board, in that it requires that the money appropriated can only be used for the payment of the salaries of 203 high school teachers at the basic salary of $1,000 each, but not a restriction upon the power of the board to maintain an eligible list of high school teachers from which vacancies in the regular corps may be filled, or from which teachers may be detailed in sufficient numbers to properly keep the schools in operation.

It is conceded that when plaintiff was assigned to high school work she stood number 204 on the list of teachers. There were 203 ahead of her, one for each of the $1,000 basic salaries appropriated by Congress. Plaintiff, however, had by this detail to high school work been removed from the eligible list, and she was no longer subject to any rule of precedence there, irrespective of the fact that one Banta stood above her on the eligible list at the time of her assignment to the McKinley school. Her status was established as that of high school teacher number 204 on the list. We think that when a vacancy occurred she automatically became teacher number 203, and, undoubtedly, was from that date entitled to be paid, from the fund appropriated, the basic salary of a high school teacher at the rate of $1,000 per annum.

It appears that, on October 16, 1909, the probationary period of one Van Vleck expired, and the board of education took the following action: "Approve, ratify, and confirm the action of the superintendent of public schools taken October 16, 1909,

in the appointment of Mr. W. C. Van Vlech, probationary teacher at Eastern High School, as permanent teacher in the Eastern High School, to take effect on and after October 16, 1909." Van Vlech was one of the 203 teachers before his probationary period expired, but with the expiration of that period a vacancy occurred. *District of Columbia* v. *Marlin,* 34 App. D. C. 265. Plaintiff, therefore, immediately succeeded to this vacancy and became teacher number 203.

The conclusion is irresistible that, from and after the time the Van Vlech vacancy occurred, plaintiff was entitled to the basic salary of a high school teacher at the rate of $1,000 per annum. But was she entitled to be paid at the same rate during the period intervening between her detail to teach and the time she succeeded to the Van Vlech vacancy? Unquestionably the board had no authority to pay her out of the appropriation made for the payment of eighth grade teachers. The provision of the act relating to the payment of eighth grade teachers is just as explicit in its terms as the one making appropriation for group A, class 6. It provides "for teachers in class 5, 154 in all, at a minimum salary of $950 each." This fund is as sacred as the other, and the board would have no more power to divert the one than the other. The fund could only be used to pay salaries of teachers in class 5, and plaintiff at no time belonged to that class.

But it is urged by counsel for the District that, because of a provision in the District Organic Act of 1878 forbidding the commissioners to create contract obligations in excess of existing appropriations, the board of education was powerless to employ plaintiff at the date of her detail to high school work and obligate the District to pay her at the rate of $1,000 per annum. Prior to the act of 1906 the restriction in the Organic Act of 1878 was held applicable to the board of education. *Myers* v. *District of Columbia,* 25 App. D. C. 132. The board was there held to be an agency of the District. Its members received their appointments from the District commissioners, and were directly responsible to the appointing power. But that condition no longer prevails. The Act of 1906 provides for the appointment of the board of education by the justices

of the supreme court of the District of Columbia. It owes no allegiance to the appointing power. It is an independent agency of the government, with broad powers. In *United States ex rel. Nalle v. Hoover,* 31 App. D. C. 311, construing the Act of 1906, we held that the final administrative authority in the management and control of the public schools of the District was vested in the board of education. The act confers upon the board the power to "appoint all teachers in the manner hereinafter prescribed and all other employees provided for in this act." It also confers upon the board power to "determine all questions of general policy relating to the schools."

The act also enlarged the duties of the board in respect of maintaining school facilities sufficient to meet the requirements of the District. It provides "that on and after July 1st, 1906, all children of school age being instructed in the schools of the District beyond the second grade shall be given a whole day session." During the same session of Congress the Compulsory Education Act for the District was passed. 34 Stat. at L. 219, chap. 3054. Hence, we find ample implied power lodged in the board to employ sufficient number of teachers from time to time to keep the schools in operation, provided the teachers possess the qualifications and are classified as by the statute required.

The board is not prohibited, as are the District commissioners, from creating obligations in excess of the appropriation. The intent of Congress in this particular seems clear. We must assume that Congress knew of the restriction upon the commissioners, and of the adjudication to the effect that it applied to the board of education as formerly constituted. Hence, if, when endowing it with the powers of an independent agency of the government, it had been intended to so restrict the board as it exists at present, provision to that effect would have been made in the act. Our interpretation of the intent of Congress is further supported by a provision of the Deficiency Appropriation Act of March 4, 1909 (35 Stat. at L. 907, chap. 298), which provided for the payment of the salaries of a number of teachers in excess of those provided for by prior appropriation, but whose services had been necessary in the

judgment of the board of education to keep the schools of the District in operation. It would seem that if it were the policy to limit the expenditures of the board to the amount originally appropriated, Congress, when confronted by a deficiency, would, by prompt enactment, have placed upon the board a restriction similar to that imposed upon the commissioners of the District. But this has not been done, evidently for the reason that it is impossible to estimate in advance the exact teaching force which will be required. We therefore conclude that, when the board detailed plaintiff from the eligible list to perform the work of a high school teacher, the statute itself created an implied obligation to pay her from that date the salary of the class to which she belonged.

The question of plaintiff's right to longevity pay presents no difficulty. We have held that she was a teacher in class 6, group A, from the time of her detailed assignment. It is conceded that she had been an accredited high school teacher for the requisite number of years to entitle her, under the statute, to the longevity increment. She should have been paid, therefore, full longevity allowance during the entire period under consideration.

The judgment is affirmed, with costs.          *Affirmed.*